All right, the last argument of the day is Appeal Number 2014-1633, 1643, and 1670, Arlington Industries, Inc. v. Bridgeport Fittings, Inc. Mr. Anderson, you've reserved four minutes for rebuttal, is that right? Correct. Okay, please begin whenever you're ready. May it please the Court, this Court should reverse the judgment of contempt for either of two reasons. First, under the Colorable Differences Test of Tevo, Bridgeport's new, patented conical connectors are substantially different from, and better than, its old cylindrical connectors. Indeed, in order to ensnare Bridgeport's new connectors, Arlington had to come up with a different claim construction than the one it proposed in the underlying litigation, which shows that a fair ground of doubt existed as to the wrongfulness of Bridgeport's conduct. Second, the District Court's construction of an external cylindrical surface violated fundamental principles of claim construction and is contradicted by the unambiguous claim language, the specification, and the figures in the patent. An external cylindrical surface in Claim 1 cannot be broadened to cover conical shapes. A cone is not a cylinder. I want to first address the proper claim construction of the and external cylindrical surface limitation. The District Court's claim construction is wrong for four reasons. First, it is contrary to the plain and ordinary meaning of cylindrical. Second, it is inconsistent with this Court's decision in International Rectifier v. I-X-Y-S. Third, it ignores the patentee's use of terms of approximation elsewhere in the patent, but conspicuously, not with regard to an external cylindrical surface. Instead of International Rectifier, isn't the arguably closer case Edwards Life Sciences, which actually construed the word cylindrical? Edwards Life Sciences is not the closer case. Edwards Life Sciences, where cylindrical was construed, the specification made it clear that it was talking about something that was substantially cylindrical. The disclosure showed a variation from the plain and ordinary meaning of cylindrical. But when I read the Court's opinion there, I don't see it doing a treatment on the spec. It just says that the judge's construction, that it doesn't require a perfect cylinder, is consistent with the spec. Well, and that the judge's construction was consistent with the specification. The structure was described in the specification as substantially cylindrical, and it was contrasted from a structure that is exclusively cylindrical. Here, in the specification, first off, the limitation and external cylindrical surface appears nowhere in the specification. Throughout the specification, we're… You talked about a cylindrical section over and over again, and cylindrical section has flanges. No, the cylindrical section does not include flanges, Your Honor. The cylindrical… Column 9? Column 9, to be clear… One piece includes a die cast member having a smooth outer cylindrical section. The section accommodates a spring steel adapter. The smooth cylindrical section has flanges at each end, defining to hold the spring steel adapter in place. That is… The judge below relied on this in saying a smooth cylindrical section isn't necessarily a pure cylinder. It can have sections on the end or subsections on the end that are flanges, and that together comprises the smooth outer cylindrical section. No, Your Honor, the flanges are not part of what was described as a smooth cylindrical section. But there are portions at either end that have a slightly greater diameter. Yes, there are two… So that the diameter of the cylindrical surface is not uniform throughout. Well, it is not uniform throughout, but the indefinite article rule that says in a comprising claim such as we have here, an external cylindrical surface means one or more than one, means that in order to interpret this claim properly, you have to interpret it as being one or more than one. That then is consistent with the figures in the patent. It is consistent with this description in Column 9 of a device that is not shown in any of the figures. Indeed, under the district court's construction, there's no smooth cylindrical surface because he conflated two different diameter cylindrical surfaces, as shown in the figures, as being one. And that was the fork in the road that led down the path to an incorrect claim construction. There's multiple places besides Column 9 that makes reference to some kind of outer cylindrical section. And each time it brings up the phrase, it talks about flanges on the end. It also says it in the summary of the invention. Column 2, a die cast member including at the inbound end a smooth outer cylindrical section having an outer diameter with flanges that accommodates a spring steel adapter. The parties do not dispute, I don't believe, that the flanges are not part of an external cylindrical surface. The flanges simply are the defining points. I think Judge Chen is referring to the expanded shoulders, shall we say, the larger diameter portions. Are you referring to the small point part? We could look at figure 6 or figure 15. We could look at figure 15 where the reduced diameter seat element 132 is defined as all the space between central flange 130 and the lip 150. And that necessarily includes not only, I think, what you would call the main cylindrical section, but then also a very skinny rectangular subsection to the right of that and right before the lip that is raised up in terms of its diameter compared to the main cylindrical section. So therefore, that would be a flange that therefore comports with the idea that smooth cylindrical section isn't necessarily completely uniform all the way through, at least as illustrated and described in this patent. That raised area, we call it a different diameter. It is not a flange as used in the patent. The flange is either 138 or 134, and that's the issue here on the claim construction. When the court construed an external cylindrical surface, it said it can be one and only one cylindrical surface, contrary to Baldwin-Grafik. When it then went down that path, it said, well, since it's got two different diameters, it has to be the approximate form of a cylinder. But that's wrong. Let's just get back to, I guess, figure 6 and figure 15, where it shows what I'll call a main rectangle and then a skinny but thicker rectangle, a taller rectangle. Okay. If we were to believe that that's the external cylindrical surface, then doesn't that show that this patent has defined external cylindrical surface in a way that it's not something that has a consistent diameter all the way through? That would be an incorrect construction, Your Honor, because it shows two diameters. And throughout the patent, when it is referring to that area, the inventor, the patentee, never used the term of approximation. When he was describing, for example, the inner locking ring, and particularly in Claim 2, he said approximately cylindrical. In Claim 1, when he's describing the an external cylindrical surface, and under Baldwin-Grafik, an means one or more than one, he says it's cylindrical. Well, if you say it's one or more external cylindrical surface, that is consistent with what is shown in Figure 2. It is consistent with the patentee's lack of use of any term of approximation in the specification with regard to that description. And it is consistent with the, if you will, the old connectors, which had three separate cylindrical surfaces. What's the construction that you want? What we want is that cylindrical should be given its plain and ordinary meaning, which is exactly what the inventor used or said here, which is that a cylinder is relating to or having, excuse me, cylindrical is relating to or having the properties of a cylinder. The parties agree that that's the ordinary definition, and there's no disagreement that a cylinder is an elongated body that has a circular cross section, which remains constant along the body's axial line. So you want cylindrical to mean a perfect geometric cylinder. Yes, that is a function of the proper claim construction and the words chosen by the inventor. It is just as in International Rectifier, where the inventor there chose the term polygonal. And this court, in an opinion offered by Judge Lynn, said that that means it's got the characteristics of a polygon. That's the ordinary understanding of it. And the court said we have to hold the patentee subject to his choice of words. The patentee here clearly could have put in a term of approximation. He could have said one and only one to get out of the indefinite article rule. He could have said an external cylindrical surface that is approximately cylindrical. I guess the other side interprets that dictionary definition relating to or having the form or properties of a cylinder as meaning a cylinder or something that's cylinder-ish. Why is that wrong? Well, it's wrong as a matter of what I'll call basic grammar. Relating to doesn't refer to a cylinder. It's relating to the properties of a cylinder. And a cylinder, everyone agrees that this is a clear, unambiguous term and should be given its plain and ordinary meaning. There is no dictionary that you can look to that says relating to or having the properties of approximately the form of a cylinder. And what happened here is that the district court in saying first that an external dot-dot-dot surface in construing that as requiring only one surface, that was the wrong, and ignoring the indefinite article rule, that was the wrong fork in the road that then forced him, in effect, to say that, well, since there's multiple diameters here, it's got to be approximately the form of a cylinder. And here, that is simply incorrect because the patentee, if he had wanted to say approximately cylindrical, as he did in Claim 2, he clearly could have done it. He knew when to insert a term of approximation. Mr. Anderson, you're into your rebuttal. Are there a couple other really quick points you want to make? Very quickly, with regard to colorable differences, Your Honor, at its core, the colorable differences test of TEVO is to ensure and protect the due process and notice rights of an entity or a person. Here, when Arlington had to come up with a different claim construction than the one that they proposed in the underlying litigation, how is Bridgeport to have any notice or knowledge that that's going to be the claim construction, a new claim construction that they would apply in this proceeding, with a different methodology for determining infringement than they did in the underlying litigation. That, right there, should indicate that this is an appropriate case for a summary contempt proceeding. And then you add to it the fact that we have our own patent that Arlington distinguished between cylindrical and conical shapes in their patent application, and that our cylindrical, excuse me, conical connector operates in a substantially different way to achieve a substantially better result, ease of use, removability, better electrical reliability, and a different manufacturing process. That clearly shows that there are colorable differences. Thanks. Okay, thanks. We'll preserve the rebuttal, or at least some of it. Ms. Klune, I guess you're going to go with 13 and then save two for rebuttal of your cross-appeal, right? Yes, Your Honor. Okay. Thank you. Saved through the court. Katherine Klune on behalf of the Cross Appellant Arlington Industries. The evidence is replete with evidence in support of the district court's finding of contempt here, both that the accused connectors are both colorable imitations of the adjoined connectors. Can you start with whether you changed your claim construction for external cylindrical surface here in this action versus the original action? Yes, Your Honor. We absolutely did not change our claim construction. In fact, there was no claim construction provided for cylindrical, but we still pointed to, and actually if you look at, I believe it's at A284 through 285, our original expert provided a claim chart, and we provided that in the record. We pointed to the cylindrical surface, the same cylindrical surface that has been identified by the district court in this case and said that that is the cylindrical surface, just one cylindrical surface where the adapter is surrounding that surface and that it was cylindrical. It was just that because Bridgeport didn't actually dispute the term, there was no claim construction actually provided, but we didn't change anything with respect to cylindrical. So I guess because the dispute never was truly joined as to what aspect of the old connectors corresponded with the external cylindrical surface, we just don't have a finding on that from the judge below or a specific position either from you or from Mr. Anderson on that score. Is that right? No, that's not right, Your Honor. So there was actually a position from Arlington, as I said, at A284 through 286 where we actually specifically identified the exact same cylindrical surface that we're relying upon now in the enjoined connectors, which is everything in front of the plan. I looked at it, but it was kind of ambiguous. It wasn't clear to me what part of the accused product you were saying was the external cylindrical surface. Well, it's because the figure has the adapter still on it, but if you read actually the terminology, Your Honor, it says in the middle column, we state, as can clearly be seen, Bridgeport's spring steel locking ring significantly borders the cylindrical surface of the leading end of the Bridgeport's member. There was no argument at that time that Bridgeport said there was three separate surfaces or there was one separate surface. As the patent always has referred to the cylindrical surface as the seat, it's actually always been kind of identified as a singular surface,  for the adapter to surround. Well, even if the patent and the specification defines that seat as having these multiple sections of different diameter, why does that mean that the expression an external cylindrical surface in Claim 1 has to include all of those different diameter portions? Why can't that be referring to the predominant central cylindrical portion? Well, there's never any support for that in the specification or in the descriptions of the way that this product works in the specification because it talks about it's one adapter that is surrounding a surface area that has varying diameters, and the fact is... I mean, the adapter can surround multiple surfaces, so when the claim says you've got an adapter surrounding the leading end external cylindrical surface, it certainly does surround that surface, even if you break it down, because it's surrounding all three surfaces. Correct. Well, again, we don't believe that there's three separate surfaces, and actually the District Court, I think, very correctly noted when it was doing its colorable imitation analysis, which it was required to do under TiVo before it got to claim construction, and I think it really can instruct the court in how the judge was looking at this, because the court was required to make a factual determination under colorable imitation as to what was the claim's feature, both in the enjoined connectors and in the accused connectors, and after listening to three days of testimony from the experts, it was clear to the court that the external cylindrical surface has varying diameters, and that it just has to be in the approximate form of a cylinder, because when you looked at the product of Bridgeport's enjoined connector, it had these raised portions, just like the patent, as Your Honor pointed out, just like the patent actually shows, but even though the patent figures show these raised portions, they still refer to it as the external cylindrical surface or the seat. They don't actually refer to it as the separate portions. They always refer to it as the seat for the adapter to surround, and so when the court identified that as the product that was infringing, and so going back to your first question, Judge Shannon, to me, about was there ever a finding, there was a finding. There was a finding of infringement of that enjoined connector, because Bridgeport, when they admitted to infringement, they admitted that every single limitation was met by their enjoined connector, and so we know that their product has to have met that limitation, and they do have varying diameters, and the fact is that the patent specification shows varying diameters. So the only consistent claim construction is what the court found was not limited to a perfect cylinder. In fact, as Bridgeport is clearly trying to articulate, just like in the Edward Light Sciences case, they're trying to change the claim term from cylindrical to perfect cylinder, and there is no support in the record to do so, and the court properly found that the claim construction is broad enough to encompass varying diameters. But where the court erred is after it found the product to be in contempt and to find Bridgeport to have just violated the permanent injunction, and what the court should really keep in mind, this case was so unique because these products had actually already been found to be colorable limitations in a jury trial and had been affirmed by this court to already be the same and had used connectors to be colorable limitations. For a different patent. Different patent, but related and actually had more limitations because it was a structure claim and this was just a method claim. But there were different limitations that issue in that case. They were very similar, but reality was, and surrounding was actually the limitation in this case, it was actually a subset because it had to be surrounding the entire leading end in the 050 patent. But what's interesting about that, though, is that once the court, though, found that the contempt was met, where he erred was in fundamentally misunderstanding what the Third Circuit exception to the form rate rule is for the special expertise exception. Because there the district court just refused to consider institutional knowledge as a basis for finding special expertise exception. And so despite the fact that there's no dispute that there was institutional knowledge that was absolutely required to try these cases, this litigation has been going on for 14 years between Arlington and Bridgeport. The same products, the same patents, the same related, all of the same witnesses, the same expert witnesses, and the same counsel on the other side. Both of whom, all of us being from outside of the state. And the court looked at the interface decision and actually despite the fact that there's no limit on what constitutes special expertise and is what this court found in Bywaters, the only thing that the winning party in the contempt proceeding have to establish is that there was no one in the forum that had the same special expertise. And in this case, there was no one in the forum that had both the patent litigation expertise and the institutional knowledge that my firm and myself had in this case. And there's really no dispute that there was this institutional knowledge, it's just that the court, as a legal issue, decided that he could not consider it because he believed it would swallow the rule. We know that that's not correct because in Interface 2, the district court following the Interface 1 decision found that the special expertise exception was met by the plaintiff's law firm having tried a previous case and said that just by having tried that one case, that their special expertise was unique. And they got attorney's fees in the first case? They got attorney's fees in the first case based on the failure on the second exception, which is when no law firm would actually take the case. Isn't it a fair reading to say in Interface 2 the judge was just sort of piggybacking on that, on the second factor and just simply saying, this is almost law of the case, I'm just going to let it keep going? The court found both exceptions, the district court found both. And they said, absolutely, law of the case, you don't need, it would make no sense to change courses midstream. And so therefore you don't have to because we know that no other law firm could take it. But it also made a very specific finding that the special expertise exception was also met. Now when it went up on appeal, first it went up and we called it Interface 3. There they found law of the case and they didn't actually discuss or reach anything to do with the special expertise exception. That actual decision was vacated. That's what Bridgeport has misapplied in their case. But when it went back up to the third circuit again, they just found that they didn't need to reach that issue because they found that the second exception had been met. But what's really important and what we noted in our brief is that when it went back down to the district court, which we refer to as Interface 5, in Interface 5 the district court came back again and said that the special expertise exception has been met by the mere fact that the unique position that the plaintiff's law firm has gained by trying this case in the same issues against similar defendants. And that pales in comparison to the importance of the interrelationship between all these cases. There isn't a third circuit case, though, that relies on institutional knowledge at the basis for special expertise.  It's not that there's a case that says it. Let's get the playing field right. Is that fair to say? The third circuit just says that there has to be a special expertise. It doesn't say that there can or cannot be institutional knowledge. That's absolutely correct. The third circuit hasn't met. In fact, it said... And then the middle district of Pennsylvania, they've got some other cases that go the other way against you. Is that fair to say, too? No. I think this was the first case where they found that Judge Caputo, just based on his own misunderstanding of Interface, and where he really was misunderstanding it was he pointed to Interface 1 and said that there had to be this bright... He imposed this bright-line rule that you had to go and interview law firms. And what we kept trying to argue to him, and what's clear, is that in Interface 1, there was no issue of institutional knowledge. It was the absolute first lawsuit being brought and, therefore, just coming in with a new law firm from a different city when there were hundreds of other law firms in New Jersey that did this. But that was not the case here. In fact, there's so few law firms that even do patent litigation in the Middle District of Pennsylvania that the only law firms that Bridgeport even tried to even identify was our expert witness and our local counsel, both of whom testified on the record with sworn statements that they were not qualified to take this case, neither from a substantive patent litigation expertise or from an institutional knowledge. They did not have that. So, where the court... So, again, the court made two errors, both on refusing to consider it, and I think that your question is right on, Judge Chen, is that while the Third Circuit doesn't say that they found institutional knowledge yet, they by no means excluded it from the ability to consider it. But where the court actually compounded its error is that even then, when it actually went to determine what the actual proper fees to apply, it actually didn't even give Arlington the rates at which it did pay for its local counsel. So, every single bill had been paid in full for their Pennsylvania rates of their attorneys, and they actually arbitrarily, the court arbitrarily reduced those rates and then gave the Washington, D.C. firm, which the court recognized was substantially more experienced, gave just the Pennsylvania attorneys' fees rates instead of a premium to that. So, it was just... The court correctly found that there was contempt, but ignored the Third Circuit's rules that an innocent party like Arlington should be made whole. When they did nothing wrong here and they should be put back into the position that they would have been in had Bridgeport not violated this injunction. And if there's no further questions right now, I'll reserve my time for rebuttal. Are there any other litigations coming around the corner in Arlington and Bridgeport? Yes, we have won another case. We have another finding of infringement and we're on an attorney's fees determination in that case right now. We won on summary judgment. In that case, and hopefully we will have that up to this court hopefully by next year. Thank you, Your Honor. Okay, let's hear from Mr. Anderson. Can we set it at three minutes? Thank you, Your Honor. First off, the claim construction that Arlington's expert proposed in the underlying litigation is of A278. And I'm quoting it in part, but it says that the external cylindrical surface means the end of the member which is inserted into the hole or knockout of the enclosure. I'm sorry, could you point me where? There's a lot of work on this. A278, second column. It then says the phrase, and he goes on, means the end of the member which is inserted into the hole or knockout of the enclosure or housing which has a cylindrical outer surface. There is no suggestion there that cylindrical has anything other than its plain and ordinary meaning as the parties agree. There is no suggestion that it means the approximate form of a cylinder. And then for Arlington to come in here in the contempt proceeding to ensnare our product, they had to come up with a different claim construction and an entirely different method of showing infringement. Before, it was look at the device, well, there's three cylindrical surfaces, that's it, it's not an issue. Here in this case... In your opposition brief below, you did identify, you know, all three portions of the seat as being, as composing the external cylindrical surface, right? Well, in the proceedings below... I mean, is that fair to say? Well, we, at one point, we were trying to determine, understand what Arlington... A347? Yeah, and we indicated that there are three separate cylindrical surfaces here and that is consistent with... Right, that composed the quote-unquote cylindrical surface. Yes. And then your expert at A408, Williamson, said the same thing. The straight parallel sides on the three cylinders that composed the quote-unquote cylindrical surface on the old design. Yes. So, it seems pretty clear that you were on the record, along with your expert, as identifying all three portions of the cylindrical section of your old connectors as corresponding to the cylindrical surface. No, Your Honor. We were saying that, and as I elicited from Arlington's expert, there are three separate cylindrical surfaces on our old device. The new device has no cylindrical surfaces. And the court here, I mean, ignored the fact, by failing to limit Arlington to how it sought to prove infringement in the underlying action, it failed to preserve our notice and due process rights. And it did not consider, then, the fact, the undisputed fact, that our connector operates in a substantially different way and achieves substantially better results. Now, on claim construction, the limitation is an external cylindrical surface that clearly implicates, because it's a comprising claim, the indefinite article rule. Okay, so it has to be one or more. You then look to the specification to see is there anything that is the clear and unequivocal, if you will, exception to the rule. Throughout the specification, when it's referring to this area, it is always prefaced by saying A. In Column 9, after saying A to the cylindrical surface, which was consistent with the indefinite article, then it says the. The case law is very clear. That's insufficient to take it out of the indefinite article rule. This is international rectifier. The inventor... Do you want to make a quick point about the attorney's fees across the field? Well, I think that the district court did a... You know, it's correct. There are no Third Circuit cases that have this institutional knowledge exception. There are... The district court cases do not allow an institutional knowledge exception. As the district court said, if you accept the institutional knowledge exception, then any loyal lawyer is entitled to it and swallows the first exception to the forum rate rule. And the rest, I think, is very clearly set forth in our brief. Okay. Thank you, Mr. Anderson. Ms. Klune, you still have some time left for rebuttal. Thank you, Your Honor. On just the cross-appeal. Just on the cross-appeal, yes. Your Honor, I just want to correct a misstatement from Mr. Anderson just now. There is absolutely not correct that there have been no Third Circuit cases. There have been at least... That we found at least two interfaith cases, district court cases, where they found special expertise. And those have been post the case where there was a law of the case. So when it came back down, right after having the Third Circuit state that at this moment they weren't going to reach the decision because they didn't need to, the district court in those cases found special expertise. And they based it on this particular issue. And other circuits have based on the exact same special expertise test that the Third Circuit uses in the interfaith test, have found that institutional knowledge meets the special expertise exception. And it really makes sense. Why? The concern over that it would swallow the rule that the court mentioned is, you know, if there was just a generalized relationship, you know, that you can just bring in your former counsel that you've known for 12 years, that would be one thing. But there is absolutely no problem when you look at a case that is this interrelated and the facts, the products, the parties, the expert witnesses, everything is the same. For you to, for the court to say that that doesn't meet, when you combine it with patent litigation, also expertise, that that in and of itself can't meet the test that this court even said in Bywaters that all the party that is the winning party  is that there's no one in the forum that has that particular type of special expertise. And nowhere is it limited to that special expertise must mean only substantive knowledge of an individual. Because in this case, the use of the, what's going on at the patent office, what was going up on here at this case, what's been going on in the interrelated parties, and knowing things like, for example, what Dr. Williamson had testified to in previous cases, or for example, how Bridgeport had actually testified about these products and the fact that they function in all the same ways. Those were relevant to us winning the case, and therefore should be considered special expertise. For that reason, we ask the court to remand on this case on just that issue. Okay. Thank you very much for your argument. Thank you very much. The case is submitted. And that concludes our proceedings for today. All rise. The Honorable Court is adjourned from day to day.